UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS N. APONTE,

                     Plaintiff,

       v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                     Defendant.

Case No. C11-5671-JCC-BAT

**REPORT AND RECOMMENDATION**

Luis N. Aponte seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by (1) improperly evaluating the medical evidence; Mr. Aponte's testimony, and the lay evidence; (2) improperly assessing Mr. Aponte's residual functional capacity ("RFC"); and (3) finding at step five there are jobs Mr. Aponte could perform. Mr. Aponte also claims the Commissioner erred in failing to remand the matter based on new evidence submitted to the Appeals Council. Dkt. 11. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

The procedural history is not in dispute and will not be repeated here. *See* Opening and Response Briefs, Dkt. 11 at 2 and Dkt. 12 at 2. At issue is the ALJ's decision entered after a

REPORT AND RECOMMENDATION - 1

hearing was conducted on December 17, 2010.  Applying the five step disability evaluation process,[1] the ALJ found:

> **Step one:**  Mr. Aponte had not worked since December 31, 2007.
>
> **Step two:**  Mr. Aponte had the following severe impairments: obesity, major depressive disorder, PTSD, cluster B traits, learning disorder, status-post ORIF on right tibia, leg pain, left pretibial mass, and ADHD by history.
>
> **Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity:**  Mr. Aponte could perform light work except he can stand and or walk for a total of 2 hours in an 8 hour workday; he can push/pull without limits except for lifting or carrying; he must avoid foot controls, could frequently balance, could occasionally climb ram or stairs, stoop, kneel, and crouch; he cannot climb ladder/rope/scaffolds or crawl and must avoid concentrated exposure to extreme cold, vibrations, hazardous machinery, and unprotected heights.  Mr. Aponte can perform simple repetitive tasks, follow short simple instructions, perform work that needs little or no judgment, and perform duties that can be learned on the job in a short period.  He has the average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days per week, or an equivalent work schedule) within customary tolerances of employer rules regarding sick leave and absence.  Mr. Aponte can respond appropriately to supervision, coworkers, and work situations, and deal with occasional work setting changes.  However, he cannot deal with the public, as in a sales position or where the public is frequently encountered as an essential element of the work process, though incidental contact with the general public is not precluded.
>
> **Step four:**  Mr. Aponte could not perform his past work.
>
> **Step five:**  As there are jobs Mr. Aponte could perform, he is not disabled.

Tr. 12-29.

## DISCUSSION

**A.    The ALJ's evaluation of the medical evidence**

Mr. Aponte argues the ALJ incorrectly assessed the opinions of examining doctors Adrian Palomino, M.D., Kimberly Wheeler, Ph.D., D. Frederick, M.D., Garrett Duckworth Jr.,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

M.D., Matthew Lyons, Ph.D., the opinions of non-examining doctor John Robinson, Ph.D., and the opinions of Andrea Buser PA-C. Dkt. 12 at 3-9.

In general, more weight should be given to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, an examining doctor's opinion may be rejected only for "clear and convincing reasons," or for "specific and legitimate reasons" where contradicted. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 1.  Adrian Palomino, M.D.

Dr. Palomino performed a consultative psychiatric evaluation of Mr. Aponte on December 4, 2009, and diagnosed Mr. Aponte with major depressive disorder, PTSD, Cluster B traits, automobile accident injuries, and assigned a GAF score of 55. Tr. 325. The ALJ gave significant weight to Dr. Palomino's opinions Mr. Aponte could perform simple and repetitive tasks; Mr. Aponte's performance with calculations indicated his ability to sustain concentration and cognitive ability are intact; Mr. Aponte had a good fund of knowledge and made no errors on his memory tests; and there was no evidence suggesting Mr. Aponte's mental impairments predisposed him to difficulties interacting with others. Tr. 25.

However, the ALJ gave little weight to the doctor's opinions Mr. Aponte was "unable to

deal with the usual stressors encountered in the work place and had perhaps decreased ability to manipulate concepts and handle ideas for three reasons." *Id.* The ALJ first found the opinions were inconsistent with the GAF score the doctor assigned which indicated "moderate symptoms" or moderate difficulty in social, occupational or school functions. The ALJ also found these limitations were "inconsistent with evidence showing greater mental functioning ability as discussed above." *Id.*

Mr. Aponte argues, to the extent Dr. Palomino's opinions are inconsistent with the GAF score the doctor assigned, the ALJ should have rejected the GAF score and not the doctor's other opinions. *Id.* This dubious argument is made without any supporting authority. This is unsurprising because an ALJ may discount a doctor's opinion where it is inconsistent with the doctor's own notes or tests, as was the case here. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). There is no dispute that the doctor's opinion Mr. Aponte cannot deal with the usual stressors of a work place does not square with a GAF score of 55, and Mr. Aponte does not argue otherwise. To be sure, one could debate the point and the Court could attempt to reweigh the evidence.

But a reviewing Court cannot reweigh the evidence or resolve conflicts in the medical evidence; that task is reserved for the ALJ. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, where the evidence is subject to more than one rational interpretation, as it is here, it is the ALJ's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). The Court accordingly concludes it was proper for the ALJ to reject the opinion Mr. Aponte cannot deal with the usual work place stressors on the grounds the opinion is inconsistent with the GAF score the doctor assigned.[3]

---

[3] The ALJ's reliance on the GAF score to discount the doctor's opinion raises a related but

Second, the ALJ discounted the doctor's opinion Mr. Aponte "had perhaps decreased ability to manipulate concepts and handle ideas" on the grounds the doctor's other findings showed greater mental functioning ability. Tr. 25. As noted above, the ALJ adopted Dr. Palomino's opinions Mr. Aponte could perform simple and repetitive tasks; Mr. Aponte's performance with calculations indicted his ability to sustain concentration and cognitive ability are intact; Mr. Aponte had a good fund of knowledge and that he made no errors on his memory tests.

The ALJ incorporated these cognitive limitations by restricting Mr. Aponte to work requiring little or no judgment, that can be learned on the judge in a short time and which requires the capacity to follow simple, repetitive tasks, followed by short simple instructions. *Id.* Mr. Aponte does not argue these are insufficient grounds. Rather, he argues the ALJ erred because the ALJ's reasons do not account for the doctor's opinion that the likelihood Mr. Aponte would improve within the next 12 months was poor, or that Mr. Aponte's depression rendered him unable to deal with the stresses of a normal workplace. Dkt. 11 at 5.

These arguments are misplaced as they have little to do with the cognitive testing Dr. Palomino performed and the doctor's opinions about Mr. Aponte's cognitive functioning. Dr. Palomino opined Mr. Aponte had cognitive limits based on the results of the mental status exam he performed, not his finding that the likelihood Mr. Aponte's depression and PTSD would improve within 12 months was poor. Likewise, Dr. Palomino opined Mr. Aponte could not deal with the stresses of the normal work place based on depression, not his cognitive limitations. Accordingly, the Court finds the ALJ properly assessed Dr. Palomino's opinions about Mr.

---

separate question: did the ALJ properly include in his assessment of Mr. Aponte's RFC, all limitations consistent with a GAF score of 55. That question will be addressed later in the Court's discussion of the ALJ's evaluation of Mr. Aponte's RFC.

Aponte's cognitive limitations.

Third, the ALJ found it was significant Mr. Aponte denied memory problems, and had not sought regular mental health treatment given Dr. Palomino's opinion that Mr. Aponte's condition was "fully treatable." Tr. 26. As discussed above, the ALJ properly assessed Dr. Palomino's opinions about Mr. Aponte's cognitive limitations, including memory problems. However Mr. Aponte's failure to seek treatment for his mental illness is not grounds to reject Dr. Palomino's opinion. Courts "have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999)") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

And finally, the ALJ found Mr. Aponte's denial of marijuana use "may be misleading as the claimant admitted to marijuana use elsewhere in the record." Tr. 26. The ALJ reasoned the "lack of clarity on the claimant's marijuana use clouds the accuracy of the aforementioned assessments." *Id.* The extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(d)(6). The ALJ's finding that Dr. Palomino was unaware of Mr. Aponte's drug use, and thus lacked a full diagnostic picture, was a specific and legitimate reason, supported by substantial evidence, to discount the doctor's opinions.

In sum, the ALJ correctly evaluated Dr. Palomino's opinions regarding Mr. Aponte's cognitive limitations. While the ALJ's evaluation of Dr. Palomino's opinions that Mr. Aponte was unable to deal with the stresses of a normal workplace was not entirely error free, the ALJ did provide valid reasons adequately supported by substantial evidence in the record to reject this

opinion. The Court will therefore not disturb the ALJ's assessment of Dr. Palomino. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 2. Kimberly Wheeler, Ph.D.

Dr. Wheeler performed two Washington State Department of Social and Health Services ("DSHS") psychological evaluations of Mr. Aponte. Tr. 287, 386. Dr. Wheeler diagnosed Mr. Aponte under DSM-IV diagnostic code 307.89 with "pain d/o associated with both psychological and medical condition, chronic Major Depression, single episode, moderate-marked 296.32"; chronic pain in rebuilt right shin from MVA 2005 (hit as pedestrian); "financial stress, homeless (couch surfing, or sleeps in car), limited social support." Tr. 389.

The ALJ accorded significant weight to Dr. Wheeler's opinions that Mr. Aponte had no limitations to understand, remember and follow simple instructions; had mild limitations to perform complex instructions, learn new tasks, perform routine tasks and care for himself; and had mild to moderate limitations in the ability to interact with others, respond to work stressor and maintain appropriate conduct. Tr. 26.

However, the ALJ gave little weight to the doctor's opinion that Mr. Aponte was "unlikely to sustain employment" for three reasons. Tr. 26. First, the ALJ found "Dr. Wheeler herself indicated that her assessment was not based solely on mental grounds and that physical factors appeared relevant (which are outside her expertise)." *Id.* An ALJ may consider a doctor's area of expertise in determining the weight a doctor's opinion should be given; however, an ALJ may not reject a doctor's opinion regarding medical limitations solely on the grounds they are outside the doctor's area of expertise. *See* 20 C.F.R. § 404.1527(d)(5); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

Here, the ALJ discounted Dr. Wheeler's opinions by incorrectly assuming her opinion

was based on a physical impairment, something the ALJ found was outside her expertise as a psychologist. But this is not a situation where the doctor impermissibly opined about a physical impairment, such as arthritis, and rendered conclusions based on the limitations caused by the physical impairment. Such an opinion would be outside the expertise of a psychologist. Rather, Dr. Wheeler, a psychologist, utilizing the DSM-IV, diagnosed Mr. Aponte with pain disorder associated with both psychological factors and a general medical condition under diagnostic code 307.89. Tr. 389. Under the DSM-IV, "pain disorder is coded according to the subtype that best characterizes the factors involved in the etiology and maintenance of pain."[4] Subtype 307.89 "is used where both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain. The anatomical site of the pain is usually coded on Axis II."[5] Here, Dr. Wheeler relying on the DSM-IV criteria diagnosed Mr. Aponte with a pain disorder in which she judged both psychological factors and a general medical condition were involved. Dr. Wheeler's psychological diagnosis and opinions[6]

---

[4] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 499 (4th ed. text rev. 2000) ("DSM-IV").

[5] *Id.*

[6] Dr. Wheeler opined:
> Do I think he's depressed? Yes. Do I think he's developed a narrow list of repetitive mind-numbing behaviors that support ongoing depression and pain? Yes. To fully approve him solely on mental health grounds without taking his physical condition doesn't make sense to me. If he wasn't in pain he wouldn't be so sedentary and depressed. PEP [psychiatric evaluation profile] on combined physical and mental health grounds. I don't think he can sustain employment right now, and the physical basis for that needs to be included in the decision. So much of his mental health state is due to his maintenance of being in such a rut: day after day zoning out to appliances with visual screens.

Tr. 392

necessarily touched on Mr. Aponte's physical condition based on criteria set by her profession; her opinions thus fell well within her area of expertise. Accordingly, the ALJ erred in discounting the doctor's opinions as outside her expertise.

The ALJ next discounted Dr. Wheeler's opinions as inconsistent with the evidence demonstrating "greater mental functioning ability." Tr. 26. The ALJ supported this by pointing to how Dr. Wheeler found Mr. Aponte showed adequate fund of knowledge, memory, attention, abstraction, judgment and problem solving on the mental status examination. However, Dr. Wheeler's opinion Mr. Aponte could not sustain employment was not based on his cognitive limitations. Rather, the doctor's opinions were based on how Mr. Aponte's depression was in the marked to severe range based on Beck Depression Inventory II testing, and the doctor's opinion that Mr. Aponte was in a rut of "mind-numbing behaviors" due to depression and pain. Tr. 392. The ALJ thus erred in relying on Mr. Aponte's cognitive limitations to reject Dr. Wheeler's opinion that Mr. Aponte was unlikely to sustain employment.

And third, the ALJ rejected the doctor's opinions on the grounds Mr. Aponte "reported being able to execute daily activities including self-care, chores, prepare simple meals, as well as engage in recreational activities such as video games on a daily basis." Tr. 27. These activities, alone, are not inconsistent with Dr. Wheeler's opinion that Mr. Aponte could not "sustain" employment. Activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding that grocery shopping, driving a car, and limited walking for exercise are not inconsistent with disability); *Reddick v. Chater*, 157 F.3d 715, 723 n.1 (9th Cir. 1998) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in

sustained work activity).  Accordingly, substantial evidence does not support the ALJ's determination to discredit Dr. Wheeler's opinions on the basis of Mr. Aponte's daily activities.

### 3. D. Frederick, M.D., Garrett Duckworth Jr., M.D.

Mr. Aponte contends the ALJ erred in rejecting the opinions of Dr. Frederick, M.D., and Dr. Duckworth, M.D., that Mr. Aponte was "severely limited" and limited to no more than sedentary work. Dkt. 11 at 8. The problem with these contentions is Mr. Aponte fails to provide any meaningful argument in support of his claims. Rather he simply states:

> In his decision the ALJ rejects some of these opinions, except he does accept Dr. Frederick's opinion that Aponte has limited ability to stand and walk, as well as postural limitations. (Tr. 24-25). However, the ALJ does not mention Ms. Buser's opinion that Aponte could stand for only one hour in an eight hour day, nor does he state any reason for rejecting this opinion. (Tr. 385)  Nor does the ALJ fully accept these physicians' opinion that Aponte is limited to sedentary, not light exertion.

*Id.* at 9. As is plain to see, this is not an explanation or argument about how the ALJ erred in rejecting the doctors' opinions. Rather it simply states the ALJ accepted some opinions and rejected other opinions. It is not enough for a claimant to merely to present an argument in the vaguest or skimpiest way, and then leave the Court to do counsel's work—framing the argument and putting flesh on its bones through a discussion of the applicable law and facts.[7]  If it were, a claimant's opening brief could be reduced to a few lines such as: the ALJ erred by failing to accept all of the opinions of the doctors, and all of the testimony of lay persons and the claimant. Accordingly, as Mr. Aponte has failed to provide any argument supported by reasons to find the

---

[7] *See e.g.*, *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review).

ALJ erred in rejecting the opinions of Dr. Dr. Frederick and Dr. Duckworth, the Court will not disturb the ALJ's findings as to these two doctors.

### 4. Andrea Buser, PA-C.

In contrast to the abject failure to provide the Court with any reason to fault the ALJ's assessment of Dr. Frederick or Dr. Duckworth, Mr. Aponte articulated a reason to question the ALJ's assessment of Ms. Buser's opinions. As noted above, Mr. Aponte specifically argued the ALJ erred by failing to mention or give any reason to reject Ms. Buser's opinion that Mr. Aponte could stand for no more than one hour in a eight hour day. This failure is problematic. Even though Ms. Buser is not an acceptable medical source,[8] the ALJ must give germane reasons for rejecting her opinions. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, the Commissioner argues the ALJ properly discounted Ms. Buser's opinion that Mr. Aponte was "severely limited" as inconsistent with the record. Dkt. 12 at 19. In 2008, Ms. Buser opined Mr. Aponte was severely limited (unable to lift more than 2 pounds of stand or walk). Tr. 281. In 2009, She opined Mr. Aponte's "physical condition is fixed & stable & should not prevent him from working." Tr. 278. The ALJ accepted this assessment as consistent with Dr. Lawrence's x-ray exam showing Mr. Aponte's leg fracture was completely healed, the opinions of Dr. Frederick, that Mr. Aponte's "lower extremities and gait/station were within normal limits" and Ms. Buser's own statements about how Mr. Aponte appeared "good." Tr. 24-25. Based on the ALJ's assessment of the evidence, the ALJ found Mr. Aponte could stand 2 hours in an 8 hour day. *Id.*

---

[8] The Code of Federal Regulations distinguishes between those opinions coming from "acceptable medical sources" and those coming from "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e). Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not physician's assistants such as Ms. Buser. 20 C.F.R. §§ 404.1513(a)(1) and (3); 416.913(a)(1) and (3).

While the ALJ correctly discussed Ms. Buser's 2008 and 2009 opinions, the ALJ failed to mention or discuss Ms. Buser's 2010 opinion that Mr. Aponte could stand only 1 hour in an 8 hour day. Tr. 384. An ALJ must explain why "significant, probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). As the ALJ failed to do so, the Court finds the ALJ erred. The Court also finds this error was not harmless.

In determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work. *See* 20 C.F.R. § 416.945(a). Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)).

Here, the ALJ assessed Mr. Aponte's RFC without discussing Ms. Buser's opinions about his standing limitations and also asked the VE hypothetical questions without including the limitation. Under the circumstances, the Court cannot confidently conclude a reasonable ALJ, when not making the same error as the ALJ, would have reached the same disability determination in this case. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Accordingly, the ALJ on remand should address Ms. Buser's opinions about Mr. Aponte's standing limitations.

### *4. Bill Wilson, M.A.*

Mr. Wilson performed a Behavioral Health Resources, ("BHR") mental health assessment of Mr. Aponte on March 8, 2010. Tr. 369. Mr. Aponte contends the ALJ erred by failing to mention or state any reason for rejecting Mr. Wilson's opinion that Mr. Aponte had

limited eye contact, quiet speech, had depressed mood, poor memory, concentration and attention span and a GAF score of "35, with a highest score in the past year of 40." Dkt. 11 at 9.

An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The Commissioner contends the ALJ gave multiple reasons to reject Mr. Wilson's opinions. The Commissioner is incorrect. The record shows the reasons upon which the Commissioner relies pertains to the ALJ's evaluation of the opinions a different mental health professional who performed a BHR evaluation of Mr. Aponte on August 17, 2010. Tr. 27 (referring in Dkt. 412).

The record shows, as argued by Mr. Aponte, the ALJ did not mention or discuss Mr. Wilson's opinions. Although the ALJ failed to discuss Mr. Wilson's opinions, the Court cannot say the ALJ erred. While an ALJ must normally "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Vincent*, 739 F.2d at 1394-95. A claimant's GAF score may be relevant evidence of his overall level of functioning. But without more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score. *Florence v. Astrue*, No. EDCV 08-0883-RC, 2009 WL 1916397, at *6 (C.D. Cal. July 1, 2009) (unpublished opinion) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Here, Mr. Aponte presents nothing more than an assertion that the ALJ erred by failing to mention the GAF scores assessed by Mr. Wilson. He does not explain how the ALJ's failure to mention these particular scores made the ALJ's evaluation of the evidence as a whole deficient or how these scores, alone, are significant probative evidence the ALJ must discuss. Likewise,

Mr. Aponte fails to explain how the ALJ's failure to discuss Mr. Wilson's observations about Mr. Aponte's limited eye contact, quiet speech, depressed mood, and poor memory, concentration and attention rendered the ALJ's evaluation deficient.

The Court also notes Mr. Wilson did not opine that Mr. Aponte was unable to work, and that the ALJ also incorporated numerous mental limitations, arguably raised by Mr. Wilson, in assessing Mr. Aponte's RFC. These include limiting Mr. Aponte to work involving only simple, repetitive tasks and following simple instructions; performing work requiring no or little judgment; limiting Mr. Aponte to jobs with occasional work setting changes; and avoiding jobs involving frequent contact with the public. Tr. 19. Accordingly, the Court declines to find the ALJ erred by failing to discuss Mr. Wilson's GAF score assessment and other opinions.

### 5. *John F. Robinson, Ph.D.*

Dr. Robinson is a non-examining State Agency psychologist who completed a Mental Residual Functional Capacity ("MRFC") assessment of Mr. Aponte in December 2009. Tr. 327-29. Mr. Aponte argues the ALJ erred by failing

> to include in his residual functional capacity assessment Dr. Robinson's opinion that Aponte is moderately limited in his ability to maintain attention and concentration for extended periods, and complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonably number and length of rest periods. (Tr. 327-28).

Dkt. 11 at 10. This argument is based on the moderate limitations identified by Dr. Robinson in Section I of the MRFC assessment. *Id.* However, as explained in the agency's Program Operations Manual, an ALJ should focus on the "narrative" portion of the MRFC form, rather than the "Summary Conclusions" portion contained in Section I. *See* Program Operations Manual System ("POMS") DI 25020.101(B)(1). The POMS provides,

> The purpose of section I ("Summary Conclusion") on the SSA-4734-F4-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-SUP **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

*Id*.

In this case, it is clear the ALJ acted in accordance with the agency's established procedures when he relied on the narrative portion of Dr. Robinson's opinion set forth in the Functional Capacity Assessment rather than on the limitations recorded in the Summary Conclusions section. In the narrative portion, Dr. Robinson opined that Mr. Aponte was "generally intact cognitively," is able to "understand, remember and carry out SRTS [short repetitive tasks]"; "Clmt does have some social and some activities only for fun. He is cognitively competent and has been able to get jobs. Neither his alleged ADHD nor his depression/discouragement would preclude otherwise suitable work placements." Tr. 329.

Accordingly the ALJ properly followed the agency's established procedures and properly relied on the opinions rendered by Dr. Robinson in the narrative portion of his report. While the POMS does not have the force of law, it is recognized in this circuit as being persuasive authority. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006). The Court therefore will not disturb the ALJ's evaluation of Dr. Robinson's opinions.

**B.      The ALJ's evaluation of Mr. Aponte's credibility**

Mr. Aponte argues the ALJ improperly evaluated his testimony about his symptoms and

REPORT AND RECOMMENDATION - 15

limitations. Dkt. No.11 at 10-17. The ALJ did not find Mr. Aponte was malingering and was thus required to provide "clear and convincing" reasons to rejecting Mr. Aponte's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (1996). Because this case should be remanded for reconsideration of the medical evidence, and the ALJ's credibility determination was inextricably intertwined with the ALJ's assessment of the medical evidence, Mr. Aponte's credibility finding should also be revisited on remand. After reevaluating the medical evidence, the ALJ will be in a better position to assess Mr. Aponte's credibility.

**C.     The ALJ's evaluation of the lay witness testimony**

   *1.      Carole Aponte*

Mr. Aponte contends the ALJ erred in rejecting the testimony of his grandmother Carol Aponte. Dkt. 11 at 18-19. An ALJ may consider lay-witness sources, such as testimony by relatives and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount the testimony of a lay witness, the ALJ must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Id*. at 919.

Carol Aponte provided written statements regarding Mr. Aponte's functioning in October 2009 and December 2010. Tr. 211, 250. The ALJ rejected her testimony about Mr. Aponte's limitations on the grounds that it was not supported by the medical record which showed mild clinical findings, evidence of greater functioning, and conservative treatment. Tr. 27. The ALJ also rejected her testimony as inconsistent with Mr. Aponte's own reports of being able to care for himself, socialize with friends, play video games and shop for necessities. *Id.* Further the ALJ found Ms. Aponte was unaware of her grandson's marijuana and alcohol use, and that she

1  identified his use of "oxycotton" an opiate that does not appear among the prescribed

2  medications in his medical records. *Id.* (referring to Tr. 217).

3       Mr. Aponte argues these are not germane reasons to reject Ms. Aponte's statements and

4  that the record does not support the ALJ's finding that Ms. Aponte indicated her grandson was

5  taking oxycontin. Dkt. 1 at 19. However, inconsistency with the evidence of record is a

6  germane reason for discrediting lay witness testimony. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211,

7  1218 (9th Cir. 2005) (noting that inconsistency with the medical record is a germane reason for

8  discrediting the testimony of a lay witness). Additionally, an ALJ may discount lay testimony

9  where is it is inconsistent with the claimant's daily functioning and statements, as is the case

10 here. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163-64 (9th Cir. 2008).

11 (finding that inconsistency between claimant's activities and a lay witness statement is a germane

12 reason to reject the lay testimony). And finally, the record shows that in answer to the question

13 "which of these is prescribed by a doctor?" Ms. Aponte wrote: "pain pills, oxycotton." Tr. 217.

14 Mr. Aponte's claim that this finding is "unsupported" is thus contradicted by the record.

15 Accordingly, the ALJ gave valid germane reasons to reject Ms. Aponte's lay testimony.

16     ***2.    Ronald Simpson***

17      The ALJ noted Mr. Simpson "alleged that the claimant limped and stumbled, showed

18 distress, was always changing positions, needed to keep his foot elevated and was withdrawn."

19 Tr. 27. The ALJ rejected the testimony on the grounds that it was inconsistent with Ms. Buser's

20 findings that Mr. Aponte had no significant ambulation problems, and had "positive affect," and

21 was inconsistent with Mr. Aponte's denial of "any problems with social withdrawal." *Id.* at 27-

22 28.

23      Mr. Aponte contends the ALJ erred by rejecting the lay testimony of Mr. Simpson. He

argues "none of [the reasons for rejecting Mr. Simpson's testimony] are germane to Mr. Simpson, and they are therefore not valid reasons to reject his description of his observations." Dkt. 11 at 19.  However, as noted above, an ALJ may properly discount lay testimony as inconsistent with the medical evidence or as inconsistent with the claimant's own statements. The ALJ's rejection of Mr. Simpson's testimony is supported by substantial evidence and was not error.

**D.      The ALJ's RFC and step five determinations**

Mr. Aponte contends the ALJ failed to properly assess his mental RFC and erred at step five by posing hypothetical questions to the VE that did not include all of his limitations.  Dkt. 11 at 20-22.  The Court need not resolve these contentions here; the ALJ erred in evaluating the opinions of Dr. Wheeler and Ms. Buser and must necessarily reevaluate on remand what impact, if any, this has on Mr. Aponte's RFC, and any hypothetical question that is posed at step five to a VE.

**E.      New evidence presented to the Appeals Council**

After the ALJ issued his decision, Mr. Aponte submitted to the Appeals Council medical reports of Dr. Patrick Halpin, M.D. Dkt. 11-23.  Mr. Aponte contends these reports compel a new hearing.  As the matter should be remanded for further proceedings, the Court need not resolve this claim.  On remand, the ALJ may develop the record as appropriate and include Dr. Halpin's new reports.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should utilize the five step disability evaluation process and (1) reevaluate the opinions

of Dr. Wheeler and Ms. Buser; (2) develop the medical record as necessary and include Dr. Halpin's new reports; (3) reevaluate Mr. Aponte's testimony; and (4) as appropriate reevaluate Mr. Aponte's RFC and proceed to steps four and five as necessary. The ALJ should also utilize the services of a VE as appropriate. A proposed order accompanies this Report and Recommendation.

Objections, if any, to this Report and Recommendation must be filed and served no later than **June 21, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **June 22, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 7th day of June, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge